ATTORNEYS FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED
Jun 22 2015, 8:55 am
CLERK
of the supreme court,
court of appeals and
tax court

# I N T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| K.K., <br> *Appellant-Respondent*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | June 22, 2015 <br><br> Court of Appeals Case No. <br> 49A02-1410-JV-687 <br><br> Appeal from the <br> Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br> The Honorable Geoffrey A. Gaither, Magistrate <br><br> Cause No. 49D09-1406-JD-1558 |

**Kirsch, Judge.**

[1] K.K., a juvenile, brings this appeal after he was adjudicated a delinquent child for having committed the offense of dangerous possession of a firearm,[1] a Class A misdemeanor. He raises one issue that we restate as: whether the odor of burnt marijuana emanating from a vehicle in which K.K. was a passenger provided probable cause for officers to arrest the car's three occupants, such that the loaded handgun found during the subsequent search of K.K. was properly admitted into evidence.

[2] We affirm.

## Facts and Procedural History

[3] While on patrol in the early morning hours of April 12, 2014, Officer Vincent Stewart of the Indianapolis Metropolitan Police Department observed a two-toned Ford Crown Victoria that appeared similar to those used by law enforcement. It caught his attention because "we have a lot of impersonators and they are still driving these former police vehicles." *Tr.* at 6. He also observed that the windows were tinted "very dark." *Id.* Officer Stewart ran a search of the plates and learned that it was previously registered to a sheriff's office or police department and that the current registered owner's driver's

---

[1] *See* Ind. Code §35-47-10-5 (providing, in part, that a child who knowingly, intentionally, or recklessly possesses firearm for any other purpose other than described in section 1 of the chapter, which exempts certain uses of firearms such as attending a hunter safety course, commits Class A misdemeanor dangerous possession of firearm). We note that an amendment to this statute became effective on July 1, 2014. We will apply the statute in effect at the time that the offense occurred in April 2014.

license was suspended. Officer Stewart then initiated a traffic stop of the vehicle.

[4] As is his custom, Officer Stewart approached the car from the passenger's side, and he saw that, in addition to the adult male driver, there were two additional occupants, not previously observable because of the tinted windows.[2] The driver's son was the front seat passenger, and his friend, K.K., age seventeen, was seated in the backseat. As Officer Stewart was speaking with and obtaining identification from the three occupants, he noticed a strong odor of burnt marijuana coming from inside the vehicle. This concerned him, and he radioed for assistance. Rather than returning to his patrol car, Officer Stewart remained at the stopped vehicle and continued to speak with the three individuals inside it, including asking the occupants if there were "any guns, knives, or weapons of mass destruction in the vehicle," which he always asks during traffic stops for officer safety, and the response he received was that there were none. *Id*. at 12. Another officer arrived at the scene, at which time Officer Stewart directed the three occupants to step out of the vehicle.

[5] One or both of the officers conducted a "quick pat down" of the three occupants, from which nothing was found, and they were placed in handcuffs and told to sit on the curb. *Id*. at 13. A third officer, Officer Michael Leepper,

---

[2] Under Indiana Code section 9-19-19-4(c), a person may not drive a motor vehicle that has a windshield, side window that is part of a front door, or a rear back window that is tinted to the extent that the occupants cannot be easily identified or recognized through the window from the outside of the vehicle. *See Meek v. State*, 950 N.E.2d 816, 819 (Ind. Ct. App. 2011), *trans. denied*.

arrived at the scene about that time. While Officer Stewart stepped away, Officer Leepper positioned himself to supervise the three who were handcuffed. Officer Leepper observed K.K. make a furtive movement by "blading" or turning his body to his left side. *Id.* at 29-30. Officer Leepper also noticed that K.K. looked "very nervous," in contrast to the other two individuals. *Id.* at 31. Suspecting that K.K. was attempting to conceal something or trying to retrieve something, Officer Leepper directed K.K. to stand, at which time Officer Leepper patted down K.K. and discovered a loaded Glock handgun in the pocket of his basketball shorts.[3] The serial number of the firearm had been scratched out.

[6] The State filed a petition alleging that K.K., then-seventeen years old, was a delinquent child for having committed the offenses of dangerous possession of a firearm, a Class A misdemeanor, and carrying a handgun without a license, a Class A misdemeanor if committed by an adult.

[7] At the fact-finding hearing, counsel for K.K. moved to suppress the handgun and objected to its admission several times during the testimonies of Officer Stewart and Officer Leepper. *Id.* at 9, 13, 34-36. The trial court denied the motions, admitted the handgun into evidence, and ultimately adjudicated K.K. a delinquent child, entering a true finding for the offense of dangerous possession of a firearm and dismissing the other charge. At the subsequent

---

[3] The probable cause affidavit indicates that K.K. was wearing jeans over the basketball shorts. *Appellant's App.* at 15.

dispositional hearing, the trial court placed K.K. on probation with a suspended commitment to the Indiana Department of Correction and ordered K.K. to participate in two specified programs. K.K. now appeals.

## Discussion and Decision

[8] K.K. claims he was unlawfully seized in violation of the Fourth Amendment, and the evidence obtained from that seizure, the handgun, was "fruit of the poisonous tree" and should have been suppressed. *Appellant's Br.* at 1, 6, 10. Because K.K.'s case proceeded to a fact-finding hearing, where he renewed the motion to suppress and objected to the admission of that evidence, his appeal is properly framed as a request to review the trial court's ruling on the admissibility of the evidence. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014) (recognizing direct review of denial of motion to suppress is only proper where defendant files an interlocutory appeal). The trial court has broad discretion to rule on the admissibility of evidence. *Meek v. State*, 950 N.E.2d 816, 819 (Ind. Ct. App. 2011), *trans. denied*; *Fentress v. State*, 863 N.E.2d 420, 422-23 (Ind. Ct. App. 2007). We will reverse a trial court's rulings on the admissibility of evidence only when the trial court abused its discretion. *Bell v. State*, 13 N.E.3d 543, 544-45 (Ind. Ct. App. 2014), *trans. denied*. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Guilmette*, 14 N.E.3d at 40. "But when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that

question de novo." *Id*. at 40-41 (citing *Kelly v. State,* 997 N.E.2d 1045, 1050 (Ind. 2013)).

[9]     K.K. contends that his arrest violated his protections under the Fourth Amendment, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. K.K. maintains that, under Indiana law, the smell of burnt marijuana coming from the car gave officers probable cause to conduct a warrantless search of the vehicle, but it did not give them probable cause to seize him by placing him in handcuffs and ordering him to sit on the curb. *See Appellant's Br*. at 9 (citing *Hawkins v. State*, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002), *trans. denied*). He asserts that there "was no legitimate concern for officer safety," and further, no marijuana was found during Officer Stewart's search of the car, such that the officer's claim that he smelled marijuana was pretextual and the officers were on a "fishing expedition." [4]  *Id*. at 3. Therefore, K.K.

---

[4] Indiana has recognized that, even if a traffic stop was pretextual in nature, which we do not concede was the case here, such does not convert a valid traffic stop into an unconstitutional stop and search. *See Lark v. State*, 755 N.E.2d 1153, 1155 n.5 (Ind. Ct. App. 2001) (citing *Kenner v. State,* 703 N.E.2d 1122, 1129 n.1 (Ind. Ct. App. 1999), *trans. denied* and *State v. Voit,* 679 N.E.2d 1360, 1363 (Ind. Ct. App. 1997)), *aff'd on reh'g*, 759 N.E.2d 275 (Ind. Ct. App. 2001)).

claims that the arrest was unlawful and anything stemming from it was fruit of the poisonous tree.

[10] A search incident to lawful arrest is an exception to the warrant requirement under the Fourth Amendment. *Bell*, 13 N.E.3d at 545 (citing *Arizona v. Gant,* 556 U.S. 332, 338 (2009)). An arrest is lawful if it is supported by probable cause. *Fentress*, 863 N.E.2d at 423. Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect has committed the criminal act in question. *Kelly*, 997 N.E.2d at 1051; *Bell*, 13 N.E.3d at 545. A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect. *Bell*, 13 N.E.3d at 545. The ultimate determination of probable cause is reviewed de novo. *Id.* Here, K.K. argues that "[t]he smell of burnt marijuana coming from inside of the car in which K.K. was a back seat passenger did not constitute probable cause for officers to arrest him and conduct a search of his person." *Appellant's Br.* at 6. After careful consideration, we disagree.[5]

---

[5] As our Supreme Court has observed, "The line between a *Terry* stop and a full-blown custodial arrest is blurred by the tension and uncertainty inherent in such encounters." *Kelly v. State*, 997 N.E.2d 1045, 1051 (Ind. 2013). The typical *Terry* stop is a relatively brief encounter, whereas an arrest occurs when a police officer interrupts the freedom of the accused and restricts the person's liberty of movement. *Id.*; *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) (citing *Sears v. State*, 668 N.E.2d 662, 667 (Ind. 1996)). Here, K.K.'s position is that he was arrested when he was handcuffed with hands behind his back and instructed to sit on the curb and that the arrest was unlawful; the State's position is that the search that revealed the handgun was a lawful search incident to arrest. Thus, both parties' baseline premise is that an arrest occurred, and we likewise proceed with our analysis on this basis.

[11]     In reaching this decision, we observe our court's analyses in recent decisions involving similar fact patterns, including *Bell* and *Meek*. In *Meek*, an officer conducted a traffic stop of a vehicle that he believed was driving away from an accident scene; the car had very dark window tint so that he could not see inside it. Upon stopping the vehicle, the officer learned that there were three occupants, two adults and a minor, and Meek was the driver. The officer smelled raw marijuana emanating from the car. 950 N.E.2d at 818. The officer called for back-up assistance. Upon inquiry, the occupants responded that there were no weapons or contraband in the car. The officers on the scene asked the two adults to step out of the car, and one officer read *Miranda* rights to the men, at which time Meek told the officer he had a weapon. The officers conducted a pat-down search of both men and found cash and Meek's gun, as well as his permit for it. The officers did not find marijuana on either suspect and found none in the car. When questioned about the odor of marijuana coming from the car, Meek stated that he had previously smoked marijuana that day. However, because the officers had smelled raw, not burnt, marijuana, they conducted a more thorough pat-down search, and a baggie fell from Meek's leg containing what officers suspected was marijuana and also white pills. Meek's motion to suppress was denied. *Id*. at 819.

[12]     In Meek's interlocutory appeal, he asserted that the trial court erred when it denied his motion to suppress the evidence because officers lacked probable cause to search his person based solely upon the smell of raw marijuana emanating from the vehicle he was driving. *Id*. Meek argued that the search

violated Article 1, Section 11 of the Indiana Constitution. *Id*. at 820. A panel of this court determined that the search was reasonable in light of the totality of the circumstances, and we affirmed the denial of the motion to suppress.[6] *Id*.

[13] That same month, a panel of this court decided *Edmond v. State*, 951 N.E.2d 585 (Ind. Ct. App. 2011). In that case, an officer conducted a traffic stop and discovered the driver, the only person in the car, possessed a learner's permit rather than a driver's license. The officer smelled a strong odor of burnt marijuana coming from the vehicle and on Edmond's breath. *Id*. at 587. Upon request, Edmond got out of the car, and the officer conducted a pat-down search and removed marijuana from Edmond's pocket. Edmond's motion to suppress was denied, and he was found guilty of possession of marijuana. *Id*.

[14] On appeal, Edmond argued that the search and seizure violated his Fourth Amendment protections, as well as those under Article 1, Section 11 of the Indiana Constitution. Like K.K., Edmond conceded that the smell of marijuana coming from his vehicle could have established probable cause to search the vehicle. *Id*. at 588. Also like K.K., Edmond asserted that probable cause to search his vehicle did not extend to his person and that the pat-down

---

[6] We recognize that the Article 1 Section 11 analysis is separate and distinct from Fourth Amendment analysis, which we are called to apply in K.K.'s case, and that in some cases Article 1, Section 11 confers greater protections to individual rights than the Fourth Amendment, but we nevertheless find that *Meek* is relevant and worthy of inclusion in our discussion, particularly given its factual similarities to the case before us. *See e.g.*, *Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014) (in addressing Bell's Fourth Amendment challenges to officer's pat-down, court included discussion of *Meek*, which presented Article 1, Section 11 claim).

was not justified by a concern for officer safety. *Id*. at 589. In its Fourth Amendment analysis, the *Edmond* court observed, "[W]e have never determined whether the smell of burnt marijuana alone may constitute probable cause to support an arrest and search incident to arrest." *Id*. at 591. The *Edmond* court concluded that under certain circumstances the odor of marijuana may constitute probable cause to support an arrest and search incident to arrest, reasoning:

> Because the odor of burnt marijuana might linger in a vehicle for a period of time, that odor does not necessarily indicate illegal activity by a current occupant; however, we note that [the officer] specifically smelled marijuana on [the defendant]'s breath in addition to the odor coming from his vehicle. Furthermore, [the defendant] was alone in the vehicle.

*Id*. The court determined that, under those circumstances, a person of reasonable caution would be warranted in the belief that Edmond possessed marijuana, and, thus, the officer had probable cause to arrest him and a lawful basis to search him. *Id*.

[15] About one year later, this court decided *Bell*. There, Bell was a passenger in a vehicle that was stopped by an officer because of an illegally displayed temporary license plate. The officer learned that the driver did not have a valid driver's license and ordered the occupants to exit the car. As Bell got out, the officer smelled raw marijuana coming from the car and from Bell's person. *Bell*, 13 N.E.3d at 544. The officer handcuffed Bell and conducted a pat-down search which revealed marijuana. Following her conviction for possession of marijuana, Bell appealed and argued that the pat-down search during the traffic

stop violated her Fourth Amendment rights and that the marijuana should not have been admitted at trial. Bell asserted, and this court agreed, that the officer had no reason to believe that Bell was armed and dangerous and thus the pat-down was not justified by officer safety concerns. *Id*. at 545. Instead, the *Bell* court assessed whether the pat-down was permissible on the basis that the officer had probable cause to arrest Bell. *Id*.

[16] Although the facts in *Bell* involved the odor of raw marijuana, the *Bell* court's analysis recognized prior Indiana decisions involving the smell of burnt marijuana in a vehicle:

> In *Shinault* [*v. State*]*,* we noted the possibility that the detection of a strong marijuana odor coming from the defendant driver could have given the officer probable cause to arrest and further search the defendant. 668 N.E.2d [274, 278 n.5 (Ind. Ct. App. 1996).] And we have previously held that the odor of burnt marijuana from a person's vehicle and breath yields probable cause to believe that she possesses marijuana. *Edmond v. State,* 951 N.E.2d 585, 591 (Ind. Ct. App. 2011).

*Id*. at 546. Ultimately, the *Bell* court determined, "[L]ike the smell of burnt marijuana, the smell of raw marijuana on a person is sufficient to provide probable cause that the person possesses marijuana." *Id*. The court concluded that the officer had probable cause to arrest Bell and conduct a search incident to arrest, and the trial court did not abuse its discretion in admitting the evidence seized during the search. *Id*.

[17] K.K. suggests that the *Edmond* decision requires that, for probable cause to exist, the officer must not only smell marijuana emanating from the vehicle, but, in addition, the defendant driver must be alone in the vehicle when the

smell is detected, and the officer must detect it on the individual's person or breath. *Appellant's Br.* at 9-10. To the extent that *Edmond* could be interpreted to require the presence of all of these factors, we respectfully decline to follow it. In our view, whether the defendant is alone and whether the odor of marijuana – burnt or raw – is also present on an individual or his breath are factors to be considered in the analysis, not bright-line prerequisites necessary for probable cause to exist. As this court has recently observed:

> The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. It is grounded in notions of common sense, not mathematical precisions. As such, the probable cause standard is a "practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

*White v. State*, 24 N.E.3d 535, 539 (Ind. Ct. App. 2015), *trans. denied* (internal citations omitted). Taking into consideration the decisions discussed above, we conclude that, at the time of the arrest in this case, Officer Stewart had knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that a criminal act had been or was being committed, and we find that probable cause existed to arrest the occupants of the vehicle, including K.K.

[18] Our decision today is in line with a determination reached by our federal colleagues in *Lessley v. City of Madison, Indiana*, 654 F.Supp.2d 877 (S.D. Ind. 2009). In *Lessley*, police conducted a traffic stop of a vehicle that had a broken license plate light. Several police cars were involved in the traffic stop, two parked in front of and one parked behind the stopped car. One officer

approached the car and smelled marijuana[7] and saw rolling papers. The women were directed to exit the car, and they were seated in police vehicles. One officer searched the car, but found "either nothing or a trace amount of marijuana." *Id*. at 889. Another officer searched the pockets of the car's three occupants and/or they were told to pull them out to view, but no marijuana was found. Officers called for a female officer to conduct a more thorough search, and when that officer arrived, the occupants were taken to a fire station and strip-searched, and marijuana was discovered on Lessley, at which time she was handcuffed and arrested. Lessley was charged with possession of marijuana, but those charges were later dismissed. All three occupants filed a complaint, alleging various state tort claims and federal civil rights claims, and it "became the subject of elaborate and expensive litigation" involving a "lengthy tour through wide tracts of Fourth Amendment law[.]" *Id*.

[19] In the course of the *Lessley* Court's discussion of the Fourth Amendment issues, it stated that probable cause existed to arrest Lessley because the officer smelled marijuana on her. 654 F.Supp.2d at 894. It continued, "Though it is a closer question, the officers also had probable cause to arrest [the other two occupants] because of the smell of marijuana emanating from [the] vehicle." *Id*. (citing *Maryland v. Pringle*, 540 U.S. 366, 327 (2003) (finding it was

---

[7] While the case does not state whether the officer smelled burnt or raw marijuana, the facts of the case reveal that, while in the car, each of the three occupants smoked from a marijuana cigarette, and then once they realized a police car was following them, one of the women placed two baggies of raw marijuana in her underwear. *Lessley v. City of Madison, Ind.*, 654 F.Supp.2d 877, 890 (S.D. Ind. 2009). So according to the facts, it was possible that the odor of burnt or raw marijuana, or both, was present.

reasonable for officer to infer that any or all of occupants had knowledge of and exercised dominion and control over contraband)). The *Lessley* Court observed that, in the case before it, the three women were traveling in a private passenger car, "which suggested that at least one of the occupants had been smoking marijuana in the presence of others." *Id.* at 894-95. "[T]he smell of marijuana indicated that there was marijuana in the vehicle and that all the occupants knew it," and given that Indiana criminalizes the constructive possession of marijuana, the *Lessley* Court held that the officers had probable cause to arrest each of the three occupants. *Id.* at 895.

[20] In the present case, after executing a valid traffic stop of a two-toned police-type vehicle with very dark tinted windows at 1:30 a.m., Officer Stewart encountered a strong odor of burnt marijuana emanating from the vehicle in which K.K. was a backseat passenger. Officer Stewart asked the three occupants whether drugs or weapons were present, and he was told there were none. The officer called for back-up assistance. Once another officer arrived, Officer Stewart ordered the three occupants out of the vehicle, and a brief pat-down of each of them was conducted, after which they were handcuffed and instructed to sit on the curb. A third officer who had arrived on the scene noticed K.K. making furtive movements, repeatedly leaning to his left, and appearing nervous. The officer patted down K.K. and found a loaded Glock handgun in his pocket. K.K. concedes, "If [he] had been lawfully under arrest during the search, then the handgun might have been admissible as the product of a lawful search incident to the arrest." *Appellant's Br.* at 10. Finding as we do

that the arrest was supported by probable cause, the trial court did not abuse its discretion by allowing the firearm to be admitted into evidence because it was discovered pursuant to a lawful search incident to K.K.'s arrest.[8]

[21]    Affirmed.

Vaidik, C.J., and Bradford, J., concur.

---

[8] As did our colleagues in *Edmond*, we "caution police officers against routinely searching people stopped for traffic violations; it is not inevitable that there will always be a valid basis for doing so." *Edmond v. State*, 951 N.E.2d 585, 592 n.7 (Ind. Ct. App. 2011).