## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public
Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward Brookins,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 29, 2016<br><br>Court of Appeals Case No.<br>49A04-1512-CR-2295<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Christina R. Klineman, Judge<br><br>Trial Court Cause No.<br>49G17-1502-F6-5208 |

**Baker, Judge.**

Edward Brookins appeals his convictions for Possession of Cocaine, a Level 6 Felony[1]; Criminal Trespass, a Class A Misdemeanor[2]; and Resisting Law Enforcement, a Class A Misdemeanor.[3] He argues that he was arrested without probable cause and that the subsequent search incident to that arrest violated his constitutional rights. He also argues that there was insufficient evidence to support his convictions for criminal trespass and resisting law enforcement. Finding no error, we affirm.

## Facts

Brookins and Sierra Payton were in a relationship from 2012 to 2014. Their son was born in July 2014, and their relationship was on and off thereafter.

In February 2015, Payton lived with her two sons. Around 3:00 a.m. on February 12, 2015, someone began ringing her doorbell and knocking on the door. She first ignored it, but after thirty minutes she went to the door, where she found Brookins. She told him to leave more than five times. When he refused, she called the police.

When Officer Kelly Chappell arrived, she spoke with Brookins and Payton, and noticed that Brookins was unsteady on his feet. After a discussion, Officer Chappell asked Payton whether Brookins could enter the house to retrieve some

[1] Ind. Code § 35-48-4-6.

[2] Ind. Code § 35-43-2-2(b).

[3] Ind. Code § 35-44.1-3-1(a)(3).

of his belongings. Payton consented. Brookins gathered some of his things and agreed to leave, and Officer Chappell saw him walk away.

[5] Three or four minutes later, Officer Chappell was still parked in front of the house when Payton's mother, who lived nearby, approached her. The mother was on the phone with Payton. Payton had informed her mother that Brookins was back. He was at the rear of the house, banging on the back window. Payton's mother relayed this information to the officer, and the officer went to investigate.

[6] As Officer Chappell walked to the back of the house, she could hear a male and a female yelling and screaming. She approached Brookins and tried to take him by the arm, but he pulled away and continued yelling. She could smell alcohol on his breath. She decided to arrest him.

[7] A subsequent search incident to his arrest revealed cocaine in Brookins's front pocket. As officers were attempting to place him in the police van, Brookins squirmed free and tried to take off. Officers were able to get ahold of him and prevent him from escaping.

[8] The following morning, the State charged Brookins with possession of cocaine, a Level 6 felony; criminal trespass, a class A misdemeanor; resisting law enforcement, a class A misdemeanor; and disorderly conduct, a class B misdemeanor. He waived his right to a trial by jury. After a November 24, 2015, bench trial, the trial court found Brookins guilty of possession of cocaine, criminal trespass, and resisting law enforcement, but not guilty of disorderly

conduct. Following a December 8, 2015, sentencing hearing, the trial court sentenced him to 180 days executed on each of the three convictions, each to be served concurrently. The trial court also awarded credit for 90 days served and 90 days good credit. Brookins now appeals.

# Discussion and Decision

[9] Brookins has three arguments on appeal. First, he argues that the trial court erred by admitting the cocaine into evidence, contending that the search incident to his arrest violated his constitutional rights. Second, he argues that the State did not present sufficient evidence to sustain his criminal trespass conviction. Third, he argues that the State did not present sufficient evidence to sustain his resisting law enforcement conviction.

# I. Admission of Evidence

[10] We reverse a trial court's decision regarding the admission of evidence when the decision is clearly against the logic and effect of the facts before the court. *Figures v. State,* 920 N.E.2d 267, 271 (Ind. Ct. App. 2010). We consider any uncontested evidence favorable to the defendant, but we will not reweigh the evidence and will resolve any conflicts in the evidence in favor of the trial court's ruling. *Widduck v. State,* 861 N.E.2d 1267, 1269 (Ind. Ct. App. 2007). We conduct a de novo review of a trial court's ruling on the constitutionality of a search or seizure. *Belvedere v. State,* 889 N.E.2d 286, 287 (Ind. 2008).

# A. United States Constitution

Brookins claims that the officers did not have probable cause to arrest him, and that therefore the subsequent search violated his Fourth Amendment rights. The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Typically, any search conducted without a warrant is unreasonable unless it falls within a "few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). One recognized exception is the search incident to arrest, *Edwards v. State,* 759 N.E.2d 626, 629 (Ind. 2001); but for a search incident to arrest to be valid, the initial arrest must be lawful. *Jones v. State,* 467 N.E.2d 1236, 1239 (Ind. Ct. App. 1984). An arrest is lawful if it is supported by probable cause. *K.K. v. State,* 40 N.E.3d 488, 491 (Ind. Ct. App. 2015). An officer has probable cause to make an arrest when, at the time of the arrest, the officer has knowledge of facts and circumstances that would warrant a reasonable person to believe that the suspect has committed the criminal act in question. *Clark v. State*, 808 N.E.2d 1183, 1192 (Ind. 2004).

Brookins and the State provide arguments and counterarguments as to whether the officer had probable cause to believe that Brookins had committed one of three crimes: public intoxication, criminal trespass, or disorderly conduct. We find that the officer had probable cause to believe that Brookins had committed criminal trespass, and since this is dispositive, we limit our discussion to that crime.

[13] A person commits criminal trespass when, "not having a contractual interest in the property, [he] knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent." Ind. Code § 35-43-2-2(b). Brookins argues that the officer did not see Payton ask him to leave the second time he came onto the property and knocked on the back window. Further, Payton later testified that when she was on the phone with her mother, "my momma was like, 'You want me to tell the police?' and I was like, 'No.'" Tr. p. 15. She also said she did not talk to the officers after the second time "because after the second time, the police officers were fed up and they were just gonna take him, and I was like, 'No.'" *Id.* at 16. Finally, Brookins argues that only Payton could order him off the property, and so the officer's request that he leave could not create probable cause regarding criminal trespass.

[14] Brookins's argument is wrong for two reasons. First, courts are to inquire into what the officer knew at the time of the arrest. The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind. 1999). It is grounded in notions of common sense, not mathematical precision. *Illinois v. Gates*, 462 U.S. 213, 235 (1983).

[15] Here, the officer found Brookins at the back of a house. The officer knew that he had already been asked to leave, that he walked away, but that he returned shortly thereafter. She knew that he smelled of alcohol, and she could hear a male and a female voice yelling. She knew that it was 3:00 a.m. and that there

were children sleeping in the house. Brookins's argument suggests that the officer should have left him at the back of the house, gone around to the front of the house, rang the doorbell, and asked Payton whether Payton had renewed her request to Brookins to leave the property. Only then could the officer come back to the rear of the house and arrest Brookins.

[16] We cannot agree. The officer could hear a male and a female voice yelling back and forth. A reasonable person in this officer's position would be warranted in thinking that Payton was yelling at Brookins another request to leave as he yelled back at her through the window. Although it is true that Payton later testified that she did not seek police assistance during this second encounter, that information is irrelevant to what the officer knew at the moment of arrest. At the moment of arrest, the officer could reasonably have assumed that Payton was asking Brookins to leave, and that he was refusing that request.

[17] But Brookins's argument is wrong for a second, more fundamental reason. He argues that the officer did not know whether Payton asked him to leave the second time he showed up. But the officer did know that Payton had asked him to leave just three or four minutes earlier. Thus, when Brookins returned, the officer had probable cause to believe that he was refusing to leave the property, despite being asked to. A person cannot defeat the criminal trespass law by hearing a request to leave, taking one step off the property, and immediately returning. For purposes of the criminal trespass statute, this is equivalent to refusing to leave.

[18] Because the officer had probable cause to believe that Brookins had committed criminal trespass, the arrest was proper. Thus, the search incident to arrest was constitutional, and the trial court did not err by admitting the results of that search into evidence.

## B. Indiana Constitution

[19] Brookins also claims that the search of his person violated his rights under Article 1, Section 11 of the Indiana Constitution. Although this provision directly tracks the Fourth Amendment to the United States Constitution, the analysis under Article 1, Section 11 "turns on an evaluation of the reasonableness of the officers' conduct under the totality of the circumstances." *Tate v. State*, 835 N.E.2d 499, 507 (Ind. Ct. App. 2005). The reasonableness of an officer's conduct depends on a "balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Lichtfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[20] Brookins essentially repeats his argument that the police had no probable cause to arrest him, which would negate the first element in our balancing test. As discussed above, however, the police did have probable cause to arrest him. The police do not violate the Indiana Constitution by arresting someone they have probable cause to believe is presently committing a crime. Brookins's argument fails.

## II. Sufficiency of the Evidence

[21] When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Gorman v. State*, 968 N.E.2d. 845, 847 (Ind. Ct. App. 2012). We consider only the probative evidence and the reasonable inferences therefrom that support the conviction. *Id.* We will affirm if the probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

## A. Criminal Trespass

[22] Brookins argues that there is insufficient evidence to support his criminal trespass conviction. He argues that Payton did not renew her request for him to leave the second time he came on the property. He argues that the trespass conviction cannot be related to his first entrance on the property because "Payton rescinded her request for Brookins to leave by admitting him into her home voluntarily." Appellant's Reply Br. p. 7. He also argues that the State never proved that Payton owned the house in question.

[23] It is well established that criminal trespass applies whether the lawful possessor of the land is the title owner or a leaseholder. *See Johnson v. State*, 38 N.E.2d 686, 689 (Ind. Ct. App. 2015) ("we summarily reject [defendant's] contention that the trespass statute applies only for unwelcomed incursions onto real property versus unwelcomed incursions onto leaseholds"). Thus, whether Payton was the owner or the renter of the house is irrelevant; the trial court

heard evidence that Payton was the lawful possessor, which is sufficient to satisfy that element of the trespass statute.

[24] As to whether there was sufficient evidence that Payton requested Brookins to leave, we find that Brookins has produced a possible interpretation of the facts, but one that the trial court was not compelled to believe. The trial court could have agreed with Brookins's argument that Payton rescinded her request for him to leave. But the trial court could also reasonably believe the much more plausible interpretation of the evidence that Payton admitted Brookins into the house for the sole purpose of retrieving his things, but that she still wanted him to leave immediately thereafter. Brookins's alternative interpretation—that Payton changed her mind and approved of him yelling and screaming through her back window at 3:00 a.m.—is theoretically possible, but not compelled by the evidence.

[25] The statements made by Payton, which seem to suggest that she did not want the police to arrest Brookins, do not necessarily equate to her rescinding her request for Brookins to leave. Payton would be perfectly consistent in requesting Brookins to leave the property but not wanting him arrested or convicted. Unfortunately for Brookins, a victim's desire to see an arrest is not an element of the trespass statute.

[26] Our standard of review makes clear that we consider the reasonable inferences from the evidence that support the judgment. The trial court could reasonably infer that Payton had not rescinded her request to Brookins to leave. When he

returned to the property and banged on the back window, he committed criminal trespass, and the evidence is sufficient to support his conviction for that offense.

## B. Resisting Law Enforcement

[27] Brookins also argues that there is insufficient evidence to support his conviction for resisting law enforcement by flight. Specifically, he argues that there is no evidence that a law enforcement officer ordered him to stop, as required by the statute. Ind. Code § 35-44.1-3-1(a)(3).

[28] The statute makes clear that the order to stop may be "by visible or audible means." *Id.* "Evidence of a proper visual order to stop is based on the circumstances surrounding the incident and whether a reasonable person would have known that he or she had been ordered to stop." *Fowler v. State*, 878 N.E.2d 889, 894-95 (Ind. Ct. App. 2008).

[29] At the time that Brookins fled, he had already been arrested. The transport van had arrived. The police removed his handcuffs so that they could search his entire person and place different handcuffs on him. At that moment, Brookins took off running.

[30] A reasonable person in Brookins's situation would know that he had been ordered to stop. Placing someone in handcuffs and preparing them for transport are equivalent to ordering that person to stop. When Brookins ran away, he committed resisting law enforcement by flight, and the evidence is sufficient to support his conviction for that offense.

The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.