## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 16 2019, 7:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sirajuddin Abdul Qadir, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | January 16, 2019 <br><br> Court of Appeals Case No. 18A-CR-2035 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable Brant J. Parry, Judge <br><br> Trial Court Cause No. 34D02-1805-F1-120 |

**Crone, Judge.**

## Case Summary

Sirajuddin Abdul Qadir appeals his conviction for attempted murder, a level 1 felony, following a bench trial. Qadir asserts that the trial court committed fundamental error in admitting evidence seized after what he claims was an unconstitutional traffic stop. Because Qadir has failed to establish any error, let alone fundamental error, we affirm.

## Facts and Procedural History[1]

The facts most favorable to Qadir's conviction are that Howard County and federal law enforcement authorities were investigating drug activity involving Reggie Balentine in early 2018. Balentine's associates included Michael O'Bannon in Kokomo and Pierre Riley in Atlanta, Georgia. In February 2018, federal authorities began tapping Balentine's and Riley's phones. Around that time, a confidential police informant involved in the investigation expressed concern for his safety. Police recorded phone conversations regarding a murder-for-hire plot involving Balentine, O'Bannon, and Riley.

On March 2, 2018, Kokomo Police Department Detective Derek Root was informed that O'Bannon would be at Balentine's house. Detective Root surveilled the residence and saw O'Bannon drive away in a Chevy Impala. The

---

[1] Indiana Appellate Rule 46(A)(6) provides that an appellant's statement of facts "shall describe the facts relevant to the issues presented for review" and "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." Qadir's statement of facts is less than a page long, is practically devoid of facts relevant to the constitutional issues presented in his brief, and fails to mention that he was one of the persons seized and searched during the traffic stop.

detective followed O'Bannon and saw him park in a Quality Inn hotel lot. A Kia with Georgia plates and two occupants – later identified as Qadir and Jamil Williamson – parked nearby. O'Bannon and one of the men in the Kia got out of their vehicles and talked in the parking lot. Eventually, all three men got into the Impala and drove away. Detective Root followed and saw the Impala go in front of and then behind the confidential informant's residence. The Impala stopped briefly, went past the residence again, and headed to a fast-food restaurant near the Quality Inn, where it remained for roughly thirty minutes.

[4] Detective Root contacted Kokomo Police Department Officer Chad Vancamp and asked him to conduct a traffic stop of the Impala when it left the restaurant. The detective followed the Impala out of the parking lot onto State Road 931 and notified Officer Vancamp that it was traveling fifty-five miles per hour in a forty-five-mile-per-hour zone. Officer Vancamp activated the emergency lights on his patrol car, and the Impala pulled into the Quality Inn parking lot.

[5] Officer Vancamp approached the Impala's rear passenger door and knocked on the darkly tinted window.[2] Qadir rolled down the window, and Officer Vancamp "detected an odor, consistent to that of [burning] marijuana." Tr. Vol. 2 at 37. Officer Vancamp advised the Impala's occupants of their *Miranda* rights, which they acknowledged, and asked Qadir to exit the vehicle. The

---

[2] At trial, Officer Vancamp testified that he approached the rear passenger's door instead of the driver's door "due to the fact that there may be gun play and that [he] was dealing with individuals for a potential hitman[,]" and he "didn't want to be shot in the back by anybody who was in the backseat." Tr. Vol. 2 at 45.

officer handcuffed Qadir, searched him, and found a Georgia identification card and a hotel room key. The officer searched O'Bannon and found $7500 in cash. He also searched Williamson, the front seat passenger, and found $2500 in cash.[3] Officer Vancamp searched the Impala and found an extended handgun magazine containing twenty 9-millimeter bullets "inside the back seat pouch of the passenger seat[,]" which was "basically directly in front of" where Qadir's knees would have been. *Id.* at 41-42. Williamson was arrested on an outstanding homicide warrant from Atlanta, and all three men were taken to the police department for questioning.

[6] Police learned that Qadir and Williamson had been staying in a room at the Quality Inn with Cynthia Foster. Police obtained Foster's consent to search the room, in which they found dark clothing that had been purchased from a Kokomo Walmart, the receipt from that purchase, and two 9-millimeter handguns. Police obtained security camera footage from Walmart showing Qadir and Williamson purchasing items from a cashier.

[7] The State charged Qadir with attempted murder and conspiracy to commit murder. At trial, Foster testified that Qadir had asked her to drive him and Williamson in her car from Atlanta to Kokomo. When they arrived at the hotel, Foster went to bed. Qadir told her that he was going to take the car to

---

[3] Recorded phone conversations between Balentine and Riley indicate that Balentine had given O'Bannon $7500 to give to third parties and that O'Bannon himself would contribute $2500 to "help with the play" so that Balentine and Riley would not get "caught up in the heat." Tr. Vol. 2 at 31.

Walmart, and he and Williamson returned to the hotel with bags from Walmart. They then left the hotel with O'Bannon. The trial court took the matter under advisement and ultimately found Qadir guilty as charged. The court later vacated the conspiracy conviction and sentenced Qadir to thirty-five years executed for attempted murder. This appeal ensued.

## Discussion and Decision

[8] Qadir contends that the trial court committed fundamental error in admitting unspecified evidence that he failed to object to at trial, claiming that it was seized as the result of an unconstitutional traffic stop.[4] "A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The fundamental error exception to the contemporaneous objection rule is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id*. (quoting *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006)). "The error claimed must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id*. (quoting *Clark v. State*, 915 N.E.2d 126, 131

---

[4] The State notes that Qadir failed to object to evidence regarding the wiretaps, the handgun magazine found in the Impala, and the handguns found in the hotel room, among other things. Qadir does not contend that the evidence admitted at trial is insufficient to support his attempted murder conviction.

(Ind. 2009)). "This exception is available only in 'egregious circumstances.'" *Id*. (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

[9] In *Brown*, our supreme court held that "a claimed error in admitting unlawfully seized evidence at trial, … without more, does not assert fundamental error[,]" explaining that "because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt." *Id*. at 205, 207. The court held that Brown's claim of error regarding the admission of evidence seized from his home did not "rise to the level of fundamental error" because it did not call into question "the integrity of the judicial process[,]" i.e., "there [was] no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence [was] not what it appear[ed] to be." *Id*.

[10] Qadir claims that Officer Vancamp's stop of the Impala based on Detective Root's report of speeding was a "sham" that was used as a pretext to conduct allegedly unconstitutional warrantless searches of the vehicle and his person. Appellant's Br. at 11. This argument ignores the axiom that "an investigative stop may be based upon the collective information known to the law enforcement organization as a whole[,]" *State v. Glass*, 769 N.E.2d 639, 643 (Ind. Ct. App. 2002), *trans. denied*, and that pretextual traffic stops are not prohibited by either the state or federal constitutions. *Mitchell v. State*, 745

N.E.2d 775, 787 (Ind. 2001); *Whren v. United States*, 517 U.S. 806, 814 (1996).[5]

Once Officer Vancamp stopped the vehicle, he was permitted to order Qadir out of the vehicle, arrest him based on the odor of burning marijuana, and conduct a warrantless search of his person incident to that arrest. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."); *K.K. v. State*, 40 N.E.3d 488, 489 (Ind. Ct. App. 2015) (holding that odor of burnt marijuana emanating from vehicle during traffic stop provided probable cause for officers to arrest all three occupants);[6] *White v. State*, 24 N.E.3d 535, 540 (Ind. Ct. App. 2015) ("[A] police officer may conduct a warrantless search of a person if the search is incident to a lawful arrest."), *trans. denied*. The officer was also permitted to conduct a warrantless search of the Impala. *See Edmond v. State*, 951 N.E.2d 585, 590 n.5, 588 n.3 (Ind. Ct. App. 2011) (stating that police "may conduct a warrantless search of a vehicle if there is probable cause to believe that it contains evidence of a crime" and that odor of burning marijuana indicates that a crime has been or is being committed). Qadir

---

[5] Qadir complains that "there is no evidence in the Record of how [Detective] Root scientifically calculated the Impala's speed—if he did." Appellant's Br. at 8. Qadir cites no authority for the proposition that a scientific calculation of a vehicle's speed is required for a legal traffic stop, and he failed to question Detective Root regarding his calculation of the Impala's speed at trial. Officer Vancamp testified that he stopped the Impala based on Detective Root's report of speeding, as well as a suspected window tint violation. Qadir expresses doubts about the latter, but because the former was a legitimate basis for the stop, we need not address those concerns. *See Santana v. State*, 10 N.E.3d 76, 78 (Ind. Ct. App. 2014) ("Police officers may stop a vehicle when they observe minor traffic violations.").

[6] Qadir complains about Officer Vancamp's "unprovable" testimony that he smelled burning marijuana when Qadir rolled down the car window. Appellant's Br. at 9. As the finder of fact, the trial court was entitled to believe that testimony, and we may not second-guess that determination on appeal. *Phillips v. State*, 25 N.E.3d 1284, 1289 (Ind. Ct. App. 2015).

suggests that the warrantless search of the hotel room was unconstitutional, but he makes no cogent argument regarding the validity of Foster's consent to search the room.

[11] In sum, Qadir has failed to establish that the traffic stop and the ensuing searches and seizures were unconstitutional, and he has failed to establish that the police fabricated evidence or engaged in willful malfeasance or that the evidence was not what it appeared to be.[7] Thus, he has failed to establish any error, fundamental or otherwise, in the admission of the evidence introduced at trial. Therefore, we affirm his conviction.

[12] Affirmed.

Vaidik, C.J., and Mathias, J., concur.

---

[7] Qadir suggests that the extended magazine found in the Impala was incompatible with the handguns found in the hotel room, but he cites no authority for this suggestion. In any event, as the State observes, "the significance of Qadir's proximity to the extended magazine is not connecting Qadir with a specific handgun in the hotel room …; the magazine connects Qadir with the murder of [the confidential informant] planned by him and the other conspirators." Appellee's Br. at 20.