

**FILED**

Jun 12 2015, 5:53 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Mark Small
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>William F. Stevens,<br>*Appellee-Defendant* | June 12, 2015<br><br>Court of Appeals Case No.<br>62A01-1406-CR-00268<br><br>Appeal from the Perry Circuit Court,<br><br>The Honorable Lucy Goffinet, Judge,<br>and the Honorable Karen A. Werner,<br>Magistrate<br><br>Trial Court Cause No.<br>62C01-1401-FD-00058 |

**Mathias, Judge.**

[1] The State of Indiana ("the State") appeals the trial court's order granting William Stevens's ("Stevens") motion to suppress evidence obtained pursuant to his warrantless arrest. The State presents a single issue for review, namely, whether the trial court abused its discretion in concluding that law enforcement

lacked probable cause to arrest Stevens after Stevens attempted to purchase pseudoephedrine at a drug store.

[2] We reverse and remand.

## Facts and Procedural History

[3] On January 23, 2014, after checking the pseudoephedrine purchase logs of local drug stores, Perry County chief deputy sheriff Daymion Marsh ("Deputy Marsh") learned that Stevens, along with several other people, had made suspicious purchases of pseudoephedrine that had "caused a scene" of some sort the day before at Werner Drug Store in Tell City, Indiana. Tr. p. 10. Deputy Marsh performed criminal history checks on the purchasers using the Indiana Data and Communication System ("IDACS"). The results of the check revealed that Stevens's criminal history included a Florida conviction labeled in IDACS as "Poss Meth W Intent to Sell Manufacture Deliver." Tr. Ex. Vol., Ex. 1, pp. 16-17.

[4] Indiana State Police Trooper Howard Lytton ("Trooper Lytton") also reviewed Stevens's criminal history record. Based on the information in the record, Deputy Marsh and Trooper Lytton believed it was illegal for Stevens to purchase pseudoephedrine pursuant to Indiana Code section 35-48-4-14.5(h)(1)(a), which makes it a Class D felony for a person convicted of dealing in methamphetamine to knowingly or intentionally possess pseudoephedrine.

[5] Deputy Marsh contacted the Perry County prosecutor's office to discuss Stevens's criminal history, his recent pseudoephedrine purchase, and Deputy

Marsh's plan to arrest Stevens.[1] While he was speaking with the prosecutor's office, Deputy Marsh learned that Stevens had arrived at Werner Drug Store again and was attempting to purchase more pseudoephedrine. Deputy Marsh went to the drug store and arrested Stevens for possession or purchase of a precursor by a methamphetamine user. Deputy Marsh did not Mirandize Stevens at the scene, even after his arrest. While still at the drug store, Deputy Marsh asked Stevens whether he had any drugs on his person, and Stevens admitted that he had approximately one gram of methamphetamine in his pocket.

[6] Stevens's fiancée, Holly Newgard ("Newgard"), was at the drugstore with Stevens and had also attempted to purchase some pseudoephedrine. After Stevens was arrested, other officers at the scene interviewed Newgard and obtained written consent from her to search the residence she shared with Stevens. During the search of Stevens's and Newgard's house, in which Deputy Marsh participated, officers discovered a burnt piece of aluminum foil, two hollowed-out pen bodies, hypodermic needles, a smoking pipe, and a spoon containing an unidentified white residue.

[7] Deputy Marsh then drove to the Tell City Police Department, where Stevens was being held, and read Stevens a Miranda warning. During his interview with Deputy Marsh, Stevens admitted that the house in which the paraphernalia was

---

[1] The record is unclear as to what action, if any, the prosecutor's office advised Deputy Marsh to take with regard to Stevens's arrest.

found was his house and that the paraphernalia itself belonged to him, not to Newgard. During the interview, Deputy Marsh noticed marks on Stevens's arm that looked like injection marks from hypodermic needles. Stevens stated that the marks came from injecting methamphetamine.

[8] On January 28, 2014, the State charged Stevens with Class D felony possession of a precursor by a methamphetamine offender, Class D felony possession of methamphetamine, Class D felony unlawful possession of a syringe, Class D felony maintaining a common nuisance, and Class A misdemeanor possession of paraphernalia.

[9] Stevens filed a motion to suppress on March 21, 2014, arguing no probable cause justified his arrest at Werner Drug Store because the Florida conviction that served as the basis for the arrest was in fact not for dealing methamphetamine but instead for dealing Alprazolam, a prescription medication more commonly known as Xanax. He argued that, as a result of his illegal arrest, any evidence collected after his arrest, including the methamphetamine he had in his pocket, the evidence found inside his home, and the statements he made to Deputy Marsh, should be suppressed. The trial court held a hearing on the motion on May 1, 2014. On June 6, 2014, the trial court issued an order granting Stevens's motion and ordering that "all items seized and all statements made by the Defendant" be suppressed. *Id*. at 65. The State filed a motion to dismiss the cause on June 10, 2014, which the trial court granted the same day.

The State now appeals.[2]

## Discussion and Decision

The State appeals the trial court's order granting Stevens's motion to suppress the evidence obtained pursuant to Stevens's warrantless arrest. We review a trial court's order granting a motion to suppress evidence to determine "whether the record discloses substantial evidence of probative value that supports the trial court's conclusions." *State v. Washington,* 898 N.E.2d 1200, 1203 (Ind. 2008) (citations and quotations omitted). We do not reweigh evidence. *Id.* The State must, on appeal from a negative judgment, show that the trial court's ruling on the motion to suppress was contrary to law. *Id.*

As a general rule, the Fourth Amendment prohibits unreasonable warrantless searches and seizures. U.S. Const. amend. IV. The Supreme Court of the United States has explained that "the line is crossed when the police, without probable cause or a warrant, forcibly remove a person from his home or other place in which he is entitled to be and transport him to the police station, where he is detained, although briefly, for investigative purposes." *Hayes v. Florida,* 470 U.S. 811, 816 (1985). However, "the warrantless arrest of an individual in a public place upon probable cause [does] not violate the Fourth Amendment." *United States v. Santana,* 427 U.S. 38, 42 (1976).

---

[2]  We held oral argument in this appeal on April 24, 2015, at Taylor University in Upland, Indiana. We extend our gratitude to the faculty, staff, and students for their hospitality and commend counsel for the quality of their written and oral advocacy.

[13] Article 1, Section 11 of the Indiana Constitution is nearly identical in text to the Fourth Amendment, but Indiana courts have developed a distinct approach to determining the reasonableness of searches and seizures. *Duran v. State,* 930 N.E.2d 10, 17 (Ind. 2010). The legality of a governmental search under Article 1, Section 11 turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). The reasonableness of a search or seizure is determined by balancing (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361.

[14] The remedy for a Fourth Amendment or Article 1, Section 11 violation is exclusion of the evidence directly obtained and also any evidence derivatively obtained as a result of the unlawful search or seizure. *See Gyamfi v. State*, 15 N.E.3d 1131, 1136 (Ind. Ct. App. 2014) ("The fruit of the poisonous tree doctrine . . . bars the admissibility in a criminal proceeding of evidence obtained in the course of unlawful searches and seizures.") (citation and quotation marks omitted).

[15] Here, the State argues that because "law enforcement officers had no reason to doubt the accuracy of the criminal history record and the information available to them at the time of Stevens's arrest," Appellant's Br. at 9, the fact that Stevens's criminal history record incorrectly indicated that he had a prior conviction for dealing in methamphetamine does not negate the existence of

probable cause to arrest Stevens when he attempted to buy pseudoephedrine on January 23, 2014. The State emphasizes that if Stevens had had a conviction within seven years for dealing in methamphetamine, his purchase of pseudoephedrine would have been a Class D felony under Indiana Code section 35-48-4-14.5(h)(1)(A). The State argues that it was reasonable for officers to rely on information generated by IDACS and that "retrospect is not the proper lens in which to view probable cause." *Id.* at 9.

[16] Stevens, on the other hand, argues that officers should not have merely relied on the criminal history record without conducting further research into the nature of Stevens's conviction. Citing Florida Statutes Annotated section 893.13, he notes that the actual *title*[3] of the Florida statute under which Stevens was convicted does not contain any reference to possessing or dealing methamphetamine.[4] He contends that before arresting him, officers should have (1) contacted the prosecutor's office to confirm that the criminal history entry was accurate or (2) accessed the Florida statute online to confirm that Stevens was convicted of a crime involving methamphetamine before arresting him.

[17] The Fourth Amendment and Article 1, Section 11 of the Indiana Constitution require that a warrantless arrest be justified with probable cause. *Van Winkle v. State,* 764 N.E.2d 258, 264 (Ind. Ct. App. 2002), *trans. denied.* Probable cause to

---

[3] The body of the statute, however, does contain references to the manufacture and possession of methamphetamine, as well as other drugs. This information was not included in Stevens's IDACS records. *See* F.S.A. 893.13(1)(g)

[4] The actual title of the statute section is "Prohibited acts; penalties." F.S.A. 893.13. The title of the statute chapter is "Drug Abuse Prevention and Control." F.S.A. 893.

arrest exists where the facts and circumstances within the knowledge of an officer are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested committed it. *Id.* at 264-65. Whether evidence is sufficient to meet the probable cause requirement is determined on a case-by-case basis. *Id.* at 265. "[B]ecause the situations that officers face 'in the course of executing their duties are more or less ambiguous,' probable cause allows for reasonable mistakes by the officer." *United States v. Moore,* 215 F.3d 681, 686 (7th Cir. 2000) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 112 (1975)). The existence of probable cause is a fact-sensitive determination. *Id.*

[18] Our supreme court has held that

> Where police officers in the street act in good faith reliance[5] on a dispatch from their own or another police agency that a crime has been committed, there is no need to show the source of the dispatcher's information or the reliability of the dispatcher's informant. It is ludicrous to assert the police officer on the street must be provided with some assurance the dispatcher at the police station has not merely fabricated tales about a crime that was, in fact, never committed and a description of suspects that do not exist.

*Moody v. State*, 448 N.E.2d 660, 663 (Ind. 1983) (internal citations omitted).[6]

---

[5] Our review of the case law reveals that the courts have treated "good faith reliance" in probable cause determinations differently than the "good faith" exception to the exclusionary rule. The good faith exclusionary rule exception applies in situations where a warrant contains a defect and the officer reasonably relies on the information in the warrant.

[6] However, *see State v. Glass*, 769 N.E.2d 639, 643 n.6 (Ind. Ct. App. 2002):

We find *Moody* to be controlling in this case and conclude that under both the Fourth Amendment and Article 1, Section 11, it was reasonable for law enforcement officers to believe that the information they received from IDACS, namely that Stevens had a prior conviction for dealing in methamphetamine, was accurate. The system is one on which officers regularly rely, and nothing indicates that officers are or should be expected to confirm or research data generated by IDACS, particularly absent any evidence of intentional misconduct with respect to use or maintenance of the system. This reasonable belief was sufficient to provide probable cause to believe that Stevens was committing a crime by attempting to purchase pseudoephedrine. *See Row v. Holt*, 864 N.E.2d 1011 (Ind. 2007) (county deputy sheriff reasonably believed he had probable cause to arrest arrestee without warrant, and even if the trier of fact concluded that the arrest was not based on probable cause because information communicated to deputy sheriff by another officer was incorrect); *Wessling v. State*, 798 N.E.2d 929, 935 (Ind. Ct. App. 2003) ("Where there is a police-channel communication to the arresting officer, he acts in good faith thereon, and such knowledge and information exists within the department, then the arrest is based on probable cause."); *Jenkins v. Keating,* 147 F.3d 577, 585 (7th Cir. 1998) ("When an officer has received information from some person—normally the putative victim or an eyewitness—who it seems

We are cognizant of our supreme court's statement: 'Where police officers in the street act in good faith reliance on a dispatch from their own or another police agency that a crime has been committed, there is no need to show the source of the dispatcher's information or the reliability of the dispatcher's informant.' *Moody v. State,* 448 N.E.2d 660, 663 (Ind. 1983). To the extent the quoted language suggests that every call to a dispatcher is sufficient in itself to satisfy the Fourth Amendment, it paints Fourth Amendment jurisprudence with too broad a brush.

reasonable to believe is telling the truth, he has probable cause to arrest the accused perpetrator.") (internal quotation and quotation marks omitted).

[20] Therefore, under the unique facts and circumstances before us, we conclude that the trial court abused its discretion in granting Stevens's motion to suppress. We accordingly reverse the trial court's order suppressing the evidence recovered as a result of Stevens's warrantless arrest and remand this matter for further proceedings consistent with this opinion.

[21] Reversed and remanded for further proceedings consistent with this opinion.

Crone, J., and Bradford, J., concur.