**FILED**

Feb 06 2017, 8:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Brooke N. Russell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>James Parrott,<br>*Appellee-Defendant* | February 6, 2017<br><br>Court of Appeals Case No.<br>49A02-1606-CR-1271<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Jose D. Salinas,<br>Judge<br><br>Trial Court Cause No.<br>49G14-1511-F6-40302 |

**Crone, Judge.**

## Case Summary

[1] A police officer detected a strong odor of raw marijuana emanating from James Parrott's vehicle during a traffic stop. The officer had Parrott exit the vehicle, handcuffed him, searched him, and found raw marijuana and other contraband

in his pockets. The State charged Parrot with marijuana possession and other crimes. Parrott filed a motion to suppress the evidence seized during the search, arguing that the officer did not have probable cause to conduct a warrantless search because the officer did not smell marijuana on him after he exited the vehicle. The trial court granted Parrott's motion. The State did not dismiss the charges and appealed the ruling.

[2] Parrott filed a motion to dismiss the State's appeal, arguing that the State was required to dismiss the charges before it could appeal the suppression order. Because the ultimate effect of the order is to preclude further prosecution of the drug-related charges, at a minimum, we deny Parrott's motion to dismiss.

[3] The State argues that the trial court erred in granting Parrott's motion to dismiss, asserting that the officer had probable cause to arrest Parrott based on the strong odor of raw marijuana emanating from his vehicle and conduct a warrantless search incident to that arrest. We agree and therefore reverse and remand for further proceedings.

## Facts and Procedural History

[4] The relevant facts are undisputed. On November 13, 2015, Indianapolis Metropolitan Police Department Officer Andrew Clark was in his patrol car and saw a vehicle run a stop sign. Officer Clark stopped the vehicle and approached the driver's side. Parrott was the vehicle's only occupant. The officer asked Parrott for his registration and ID. As the officer spoke with Parrott, he detected an "odor of raw marijuana coming from the vehicle" that

was "pretty strong." Tr. at 10, 11. According to Officer Clark, raw marijuana has "no burnt or singed smell" and smells "[k]ind of almost like a plant[,]" whereas the smell of burnt marijuana is "similar to like a cigarette smell where it's something more burned. It's a more of a singed-in-the-air kind of smell at least for me." *Id.* at 8. The officer did not see any marijuana in plain view.

[5] Officer Clark had Parrott step out of the vehicle, at which point "there was not a distinguishable odor [of marijuana] from him." *Id.* at 19. In Officer Clark's experience, "a passenger compartment is confined space. It's an enclosed area. So if it's not exposed to any outside sources, […] that smell is going to linger." *Id.* at 23-24. Also, "the smell from a passenger compartment is obviously stronger than it would be a smell coming from an actual individual person." *Id.* at 24. Officer Clark handcuffed Parrott and searched him "because of the odor of marijuana coming from the car …. [w]hen he was in it." *Id.* at 19. The officer found "a half burnt marijuana cigarette and a yellow baggie" with crack cocaine in Parrott's right pants pocket and a "small baggie of a green leafy substance that [the officer] knew to be marijuana" and two Percocet pills in his left pants pocket. *Id.* at 12-13. The officer put the contraband in an envelope and put Parrott in his patrol car. Two backup officers arrived, and Officer Clark went to search Parrot's vehicle. Parrott ran away from the backup officers, who apprehended him. Officer Clark found no contraband in Parrott's vehicle.

[6] The State charged Parrott with six counts: level 6 felony cocaine possession, level 6 felony narcotic drug possession, class B misdemeanor marijuana

possession, and two counts of class A misdemeanor resisting law enforcement. Parrott filed a motion to suppress the evidence seized during the search. At a hearing on the motion, Parrott argued that Officer Clark did not have probable cause to conduct a warrantless search of his person because the officer did not smell marijuana on his person after he exited the vehicle.[1] The trial court took the matter under advisement. At a subsequent hearing, the court granted Parrott's motion to suppress, stating, "The nuance is that if there's probable cause -- if [Parrott] was in the car, you could search him. But by stepping out of the car, you know, they lose that probable cause to [Parrott]." *Id*. at 46. The court also stated, "Based on the facts that I saw, the search of the vehicle was 100 appropriate and legal [sic]." *Id*. at 48. The court told the State, "[I]f you want to do an interlocutory [appeal], I'll be happy to grant that." *Id*. at 48. Defense counsel advised the court, "We do have misdemeanor Resistings that will remain even with the Court's ruling." *Id*. at 50. The court then set a pretrial hearing. The State filed a motion to correct error. The trial court issued a written order in which it granted Parrott's motion to suppress and incorporated its oral findings of fact and ruling and also denied the State's motion to correct error.

[7] Indiana Code Section 35-38-4-2 provides that the State may take appeals to this Court in certain cases, including

---

[1] Parrott did not challenge the validity of the traffic stop or Officer Clark's training and experience in detecting the odor of raw marijuana.

(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment.

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.

[8] Indiana Appellate Rule 5 provides that this Court has jurisdiction in appeals from final judgments and from interlocutory orders. After the denial of its motion to correct error, the State filed a motion to stay proceedings and certify order for interlocutory appeal pursuant to Indiana Code Section 35-48-4-2(5), asserting that it "cannot proceed on one or more of the charges" as a result of the suppression ruling. Appellant's App. at 71. Parrott filed an objection and argued,

2. IC 35-38-4-2(6) references appeals from interlocutory orders while IC 35-38-4-2(5) is the specific appeal authority for an appeal from an order granting suppression. The specific controls the general.

3. The controlling code section requires that the order effectively preclude further prosecution on the affected counts which implies

a dismissal. The proper procedure is to dismiss the affected counts then take a direct appeal and stay the remaining counts.

*Id.* at 73. Before the court ruled on its motion to stay, the State filed a notice of appeal indicating that it was appealing from a final judgment. Indiana Appellate Rule 2(H)(5) provides that a judgment is a final judgment if "it is otherwise deemed final by law."

After the State filed its appellant's brief, Parrott filed a motion to dismiss the appeal, arguing that this Court lacks jurisdiction to consider the appeal because the State did not dismiss any charges.[2] The State filed a response, asserting that the suppression order is a judgment deemed final by Indiana Code Section 35-38-4-2(5). The appeal was fully briefed in due course.

## Discussion and Decision

## Section 1 – The State was not required to dismiss the charges against Parrott before filing a notice of appeal.

We first address Parrott's motion to dismiss this appeal. "The State's right to appeal in a criminal matter is statutory, and the State cannot appeal unless given that statutory authorization by the legislature. The State's statutory right of appeal is in contravention of common law principles and is therefore strictly construed." *State v. Coleman*, 971 N.E.2d 209, 211 (Ind. Ct. App. 2012)

---

[2] Although Parrott does not specifically say so in his motion to dismiss, we presume that his assertion of lack of jurisdiction is based on the premise that the suppression order is not a final judgment because the State did not dismiss the charges.

(citation omitted). That said, we may not read into a statute a restriction that the legislature did not include. *Williams v. State*, 952 N.E.2d 317, 319 (Ind. Ct. App. 2011).

[11] Parrott has not cited any statute, rule, or caselaw that unequivocally requires the State to dismiss charges before it may appeal from an unfavorable suppression order. Indeed, Indiana Code Section 35-38-4-2(5) itself does not require dismissal as a precondition to appeal. In *State v. Pease*,  (Ind. Ct. App. 1988), another panel of this Court noted that since the enactment of Indiana Code Section 35-38-4-2(5),

> this court has construed I.C. 35-38-4-2(5) as permitting appeals in those cases where the suppression order has the effect of precluding further prosecution by the State. *Such suppression orders, when interlocutory, are "tantamount to a dismissal of the action and therefore appealable as a final judgment under subsection (5) of the statute." State v. Williams* (1983), Ind. App., 445 N.E.2d 582, 584. *See, e.g. State v. Watkins* (1987), Ind. App., 515 N.E.2d 1152, n.1; *State v. Blake* (1984), Ind. App., 468 N.E.2d 548, 550.

> The State charged Pease with class D felony possession of a schedule II controlled substance (amphetamine). The State acquired its evidence of this offense as a consequence of the illegal search alleged in Pease's motion to suppress. When the trial court ordered that the fruits of the search of Pease's person were to be excluded, the State lost its ability to prosecute and dismissed the information the same day.

> *The order granting Pease's motion to suppress has become a final order by virtue of the action's dismissal.* I.C. 35-38-4-2(5) authorizes appeals from orders suppressing evidence when the effect is to preclude further prosecution. We are unaware of any principled

> basis for distinguishing between final orders and interlocutory orders deemed final when both have the effect of precluding further prosecution.

*Id*. at 1209 (emphases added).

Notwithstanding any apparent inconsistency between the two italicized sentences, the plain meaning of Indiana Code Section 35-38-4-2(5) is clear: if the ultimate effect of an order granting a motion to suppress is to preclude further prosecution of one or more counts of an information or indictment, the State may appeal that order as a final judgment. Dismissal of the charges is not required. At a minimum, the ultimate effect of the trial court's suppression order in this case is to preclude further prosecution of the drug-related counts against Parrott. The State was not required to dismiss those counts before filing a notice of appeal. Therefore, we deny Parrott's motion to dismiss this appeal by separate order issued contemporaneously with this opinion.

## Section 2 – The warrantless search of Parrott's person did not violate the Fourth Amendment to the U.S. Constitution.

We now address the merits of the State's appeal. "At the suppression hearing, the State had the burden of demonstrating the constitutionality of the measures it used to seize evidence as the result of a warrantless search." *State v. Holley*, 899 N.E.2d 31, 33 (Ind. Ct. App. 2008), *trans. denied* (2009). Thus, the State appeals from a negative judgment and must show that the trial court's suppression ruling was contrary to law. *Id*. We "will reverse a negative judgment only when the evidence is without conflict and all reasonable

inferences lead to a conclusion opposite that of the trial court. We will not reweigh the evidence or judge witness credibility." *Id*. (citation omitted).

[14]   The Fourth Amendment to the U.S. Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fundamental purpose of the Fourth Amendment is to protect the legitimate expectations of privacy that citizens possess in their persons, homes, and belongings. *Mullen v. State*, 55 N.E.3d 822, 827 (Ind. Ct. App. 2016). This protection has been extended to the states through the Fourteenth Amendment. *Id*. "In general, the Fourth Amendment prohibits searches and seizures conducted without a warrant that is supported by probable cause." *Id*.

> As a deterrent mechanism, evidence obtained without a warrant is not admissible in a prosecution unless the search or seizure falls into one of the well-delineated exceptions to the warrant requirement. Where a search or seizure is conducted without a warrant, the State bears the burden to prove that an exception to the warrant requirement existed at the time of the search or seizure.

*Id*. (citations and quotation marks omitted).

[15]   The State essentially concedes that the only basis for upholding the constitutionality of Officer Clark's warrantless search of Parrott under the

Fourth Amendment would be as a search incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search ….").[3]

> A suspect is considered under arrest when a police officer interrupts the freedom of the accused and restricts his liberty of movement. The fact that a police officer does not inform a defendant he is under arrest prior to a search does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest.

*Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) (citation, quotation marks, and brackets omitted). The State does not try to pinpoint when Parrott was under arrest, but for purposes of this opinion, we will assume, without deciding, that he was under arrest when he was handcuffed by Officer Clark.

[16] "An officer may arrest a person without a warrant if the officer has 'probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence ….'" *Haley v. State*, 696 N.E.2d 98, 104 (Ind. Ct. App. 1998) (quoting Ind. Code § 35-33-1-1(a)(4)), *trans. denied*. A

---

[3] The rationale for the rule allowing warrantless searches incident to arrest is "the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime[.]" *Preston v. United States*, 376 U.S. 364, 367 (1964).

person who knowingly possesses pure or adulterated marijuana commits possession of marijuana, a class B misdemeanor. Ind. Code § 35-48-4-11(a). "Possession can be either actual or constructive." *Britt v. State*, 810 N.E.2d 1077, 1082 (Ind. Ct. App. 2004). "Actual possession occurs when the defendant has direct physical control over the item, while constructive possession involves the intent and capability to maintain control over the item even though actual physical control is absent." *Id*.

[17] "Probable cause to arrest exists where the facts and circumstances within the knowledge of an officer are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested committed it." *State v. Stevens*, 33 N.E.3d 1200, 1204-05 (Ind. Ct. App. 2015), *trans. denied*.

> The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. It is grounded in notions of common sense, not mathematical precisions. As such, the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*White v. State*, 24 N.E.3d 535, 539 (Ind. Ct. App. 2015) (citations and quotation marks omitted), *trans. denied*. "The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a reasonable doubt. Probable cause, in fact, requires only a fair probability of criminal

activity, not a prima facie showing." *Jellison v. State*, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995) (citation omitted).

[18] "[A]s long as probable cause exists to make an arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search." *Moffitt v. State*, , 247 (Ind. Ct. App. 2004), *trans. denied*. "A police officer's subjective belief as to whether he has probable cause to arrest a defendant has no legal effect. Instead, the police officer's actual knowledge of objective facts and circumstances is determinative." *VanPelt v. State*, 760 N.E.2d 218, 223 (Ind. Ct. App. 2001) (citation omitted), *trans. denied* (2002). "The ultimate determination of probable cause is reviewed de novo." *Bell v. State*, 13 N.E.3d 543, 545 (Ind. Ct. App. 2014), *trans. denied*.

[19] The State argues that Officer Clark had probable cause to arrest Parrott "based on the odor of raw marijuana emanating from the vehicle of which he was the driver and sole occupant." Appellant's Br. at 10. Over the years, this Court has decided numerous cases involving the odor of marijuana as the basis for a warrantless search of a person or vehicle. *See, e.g.*, *K.K. v. State*, 40 N.E.3d 488, 495 (Ind. Ct. App. 2015) (finding that officer had probable cause to arrest and conduct warrantless search of vehicle's backseat passenger based on "strong odor of burnt marijuana coming from inside the vehicle" and passenger's "furtive movements" and nervousness); *Bell*, 13 N.E.3d at 546 (finding that officer had probable cause to arrest and conduct warrantless search of vehicle's passenger based on "strong odor of raw marijuana coming from both the vehicle and Bell's person."); *Edmond v. State*, 951 N.E.2d 585, 591-92 (Ind. Ct.

App. 2011) (finding that officer had probable cause to arrest and conduct warrantless search of vehicle's sole occupant based on smell of burnt marijuana coming from vehicle and occupant's breath); *Meek v. State*, 950 N.E.2d 816, 820 (Ind. Ct. App. 2011) (finding that officer had probable cause to conduct warrantless search of vehicle's driver, where officers smelled raw marijuana emanating from vehicle, driver admitted to possessing weapon after initially denying it, driver "stated that he had previously smoked marijuana that day[,]" and officers found no marijuana in vehicle or on passenger's person), *trans. denied*; *Marcum v. State*, 843 N.E.2d 546, 548 (Ind. Ct. App. 2006) (finding that officers had probable cause to conduct warrantless search of vehicle where one officer smelled "strong odor of raw marijuana emanating from the vehicle" and another officer smelled burnt marijuana); *Sebastian v. State*, 726 N.E.2d 827, 831 (Ind. Ct. App. 2000) (finding that officers had probable cause to arrest and conduct warrantless search of driver and vehicle based on erratic driving and "distinctive odor of burnt marijuana emanating from the passenger compartment."), *trans. denied*.

[20] None of these cases is factually on all fours with this case, but they offer some guidance in determining whether probable cause existed to arrest Parrott and conduct a warrantless search of his person incident to that arrest. In *Bell*, we noted that "the odor of raw marijuana indicates that it has not been smoked and therefore still may be in the defendant's possession." 13 N.E.3d at 546. According to Officer Clark, the odor of raw marijuana in Parrott's vehicle was "pretty strong" and "stronger than it would be" coming from a person. Tr. at

11, 24. And in *K.K.*, we explained that whether a defendant is alone in a vehicle "and whether the odor of marijuana—burnt or raw—is also present on an individual or his breath are factors to be considered in the analysis, not bright-line prerequisites necessary for probable cause to exist." 40 N.E.3d at 494.

[21] Although Parrott did not drive erratically or act furtively like the defendants in *Sebastian* and *K.K.*, and although he did not smell of marijuana or admit to smoking marijuana like the defendants in *Edmond*, *Bell*, and *Meek*, we conclude that the facts and circumstances within Officer Clark's knowledge were sufficient to warrant a reasonable belief that Parrott possessed raw marijuana in his vehicle. Parrott was the sole occupant of the vehicle, and the odor of raw marijuana emanating from the vehicle was "pretty strong," from which one could reasonably infer that raw marijuana was present in the vehicle and that Parrott had the intent and capability to maintain control over it. Therefore, the officer had probable cause to arrest Parrott for marijuana possession and conduct a warrantless search of his person incident to that arrest. *See Butler v. United States*, 102 A.3d 736, 742 (D.C. 2014) (finding that officer had probable cause to arrest and conduct warrantless search of defendant based on strong odor of "fresh" marijuana emanating from vehicle because (1) "appellant was the sole occupant of the vehicle, thus making it more likely that any marijuana present was either on his person or within his exclusive control" and (2) smell of fresh marijuana "makes it more likely that appellant was presently in

possession of marijuana.").[4]  Parrott cites no authority for his suggestion that the officer was required to search the vehicle before he could search Parrott's person.[5]  In sum, the search did not violate the Fourth Amendment.

## Section 3 – The warrantless search of Parrott's person did not violate Article 1, Section 11 of the Indiana Constitution.

[22]  Article 1, Section 11 of the Indiana Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"This Section has long served to protect Hoosiers from unreasonable searches and seizures."  *Garcia v. State*, 47 N.E.3d 1196, 1199 (Ind. 2016).  "While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied."  *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008).

---

[4] Because the *Butler* court contrasted fresh and burnt marijuana, 102 A.3d at 741 n.10, we presume that fresh marijuana is the same as raw marijuana.

[5] Parrott argues, "[I]f the odor of raw marijuana coming from the passenger compartment of a vehicle, standing alone, without searching the vehicle or any other circumstances being present, is enough to arrest the defendant for possession of marijuana, then it does not matter if marijuana were ever found."  Appellee's Br. at 14.  We emphasize that "[p]robable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was committed."  *Keeylen v. State*, 14 N.E.3d 865, 871 (Ind. Ct. App. 2014) (citation and quotation marks omitted), *clarified on reh'g*, 21 N.E.3d 840, *trans. denied* (2015).  Parrott also raises a "slippery slope" argument based on hypothetical facts not present in this case.  Appellee's Br. at 15.

"Reasonableness of a search under the Indiana Constitution 'turns on an evaluation of the reasonableness of the police conduct *under the totality of the circumstances.*'" *Garcia*, 47 N.E.3d at 1199 (quoting *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005)) (emphasis in *Garcia*). "In considering the totality of the circumstances, the perspectives of both the investigating officer and subject of the search are considered." *Id*. "Three factors must be balanced: '1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs.'" *Id*. (quoting *Litchfield*, 824 N.E.2d at 361). "The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable." *Baniaga*, 891 N.E.2d at 618.

[23] The State first argues, "Because there was probable cause that a violation had occurred, [i.e., that Parrott possessed marijuana], the degree of suspicion or knowledge weighs in favor of the State." Appellant's Br. at 13. We agree. As for the degree of intrusion, the State acknowledges that it is "not insignificant" but asserts that "[t]he trial court's ruling that the officers could search the vehicle meant that the intrusion on [Parrott's] ordinary activities involved in a search of [his] pockets was only modestly greater than that which [he] would have experienced anyway from the vehicle search." *Id*. at 14. Again, we agree. And as for the extent of law enforcement needs, the State relies on our pronouncement in *Edmond* that "[a] search incident to arrest serves important purposes, such as ensuring that the arrestee is unarmed, preventing the arrestee

from bringing contraband into jail, and preventing the destruction of evidence." 951 N.E.2d at 592. Balancing these three factors, we conclude that the State has met its burden to show that the warrantless search of Parrott's person was reasonable under the totality of the circumstances and therefore did not violate Article 1, Section 11 of the Indiana Constitution. Consequently, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.

[24] Reversed and remanded.

Riley, J., and Altice, J., concur.