## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2018, 10:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick Vaiana
Voyles, Vaiana, Lukemeyer, Baldwin
  & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Stephen R. Creason
Chief Counsel

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Mitzs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | December 7, 2018<br><br>Court of Appeals Case No.<br>18A-CR-1048<br><br>Appeal from the Marion Superior Court<br><br>The Honorable James Snyder, Commissioner<br><br>Trial Court Cause No.<br>49G20-1602-F2-7409 |

**Vaidik, Chief Judge.**

# Case Summary

Following a traffic stop, Christopher Mitzs was convicted of possession of cocaine. He now appeals, arguing that the traffic stop violated the Fourth Amendment to the U.S. Constitution. We affirm.

# Facts and Procedural History

On February 21, 2016, Indianapolis Metropolitan Police Department Officers Jered Hidlebaugh and Zachary Miller were patrolling the city's north side near 34th and Meridian Streets when they saw a blue Dodge Magnum parked in a no-parking zone. Officers Hidlebaugh and Miller approached the car and spoke with the passenger—no driver was in the car. The officers noticed a strong odor of marijuana "like somebody had been smoking marijuana in the car." Tr. Vol. II p. 100. They requested backup, and Officers Christopher Cooper and Michael Sojka arrived to help search the car and passenger. The officers did not find any marijuana, so they left the car where it was parked. Officers Hidlebaugh and Miller notified the other members of the north-district team that there was a blue Dodge Magnum parked at 34th and Meridian Streets with no driver, and that "if we see it rolling, and we can get an infraction on it, it would be a good thing to stop, and try to identify the driver." *Id.* at 32.

Twenty minutes later, Officer Miller saw the car moving north on Salem Street. Officer Miller observed the car "fail to signal two hundred feet prior to turn[ing]" onto 35th Street and fail to "come to a complete stop at the stop

sign" at the intersection of 35th and Salem Streets. *Id.* at 115-16. Officer Miller radioed to other officers that he had seen the blue Dodge Magnum commit two traffic infractions and intended to pull the car over. Officer Miller maneuvered his patrol car to follow the Dodge Magnum and saw it turn left on Meridian Street into the opposing lane of traffic—i.e., "driving left of center." *Id.* at 118. Before Officer Miller could activate his patrol car's lights, another officer initiated a traffic stop and pulled the Dodge Magnum over. As Officer Miller and Officer Richard Faulkner (who made the traffic stop) approached the driver's side door, there was a "strong smell of marijuana coming from the vehicle." *Id.* at 119. Once Officer Miller "noticed the smell of marijuana" he asked the driver, later identified as Mitzs, to "step out of the vehicle" and "placed him in handcuffs." *Id.* at 120. The same person (who was searched just twenty minutes earlier) was in the passenger seat. *Id.* at 145-46. After Mitzs was handcuffed, Officer Miller did a pat-down to "make sure [Mitzs] ha[d] no weapons on him." *Id.* at 121. As soon as Officer Miller began to pat down Mitzs, Mitzs "immediately reached for his . . . right front pocket." *Id.* Officer Miller told Mitzs not to do that again, but Mitzs "reached again" for his right front pocket. *Id.* at 122. Officer Miller thought that Mitzs could have been reaching for a weapon, so he restrained Mitzs's arm and Officer Cooper searched Mitzs's right front pocket. In the pocket, Officer Cooper found a "digital scale[] with a white powdery substance on it," a "baggie with more white powdery substance" (later determined to be 10.42 grams of cocaine), and "several other empty baggies." *Id.* at 123. Officer Cooper also searched the car

and found a revolver in "the center console." *Id.* at 170. Officer Miller later discovered that Mitzs had a permit for the gun. *Id.* at 123.

[4] The State charged Mitzs with Level 2 felony dealing in cocaine and Level 3 felony possession of cocaine (elevated because of the gun).[1] Mitzs filed a motion to suppress "any evidence obtained from the stop" of his car. Appellant's App. Vol. II pp. 78-80. Mitzs claimed violations of both the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. Following a hearing, the trial court denied Mitzs's motion to suppress and found that Officer Miller "observed Mitzs commit the traffic infraction of failure to stop," and that the odor of marijuana "gave officers probable cause to search both Mitzs and his vehicle further for contraband." *Id.* at 96. A few weeks later, during the jury trial, the defense objected when the State presented evidence obtained during the traffic stop. The trial court admitted the evidence over the defense's objections and stated that "there was a valid traffic stop, that being, the failure to stop at a stop sign" and that it also believed there was a second traffic infraction—that Mitzs "was left of center" when he turned onto Meridian Street. Tr. Vol. II p. 157. Ultimately, the jury found Mitzs not guilty of dealing in cocaine but guilty of possession of cocaine.

[5] Mitzs now appeals.

---

[1] Mitzs was also charged with Class A misdemeanor operating a motor vehicle while his driving privileges were suspended, but the State dismissed that charge before trial.

# Discussion and Decision

[6]    Mitzs contends that the traffic stop and subsequent pat-down violated his federal constitutional rights and that the trial court erred when it admitted into evidence the items found during the stop. We review de novo a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Westmoreland v. State*, 965 N.E.2d 163, 165 (Ind. Ct. App. 2012).

## I. Traffic Stop

[7]    Mitzs contends that the traffic stop violated the protections afforded by the Fourth Amendment to the U.S. Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized.

U.S. Const. amend. IV. Our jurisprudence reflects two types of police encounters that implicate Fourth Amendment protection: the investigatory stop and the custodial stop. *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). An investigatory stop is generally brief in duration and is constitutionally permissible so long as the officer "has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Id.* (quotations omitted).

If an officer observes a driver commit a traffic violation, he has probable cause—and thus also the lesser included reasonable suspicion—to stop that driver. *Id.* As long as there is an observable traffic violation, "the stop is valid whether or not the police officer would have otherwise made the stop but for ulterior suspicions or motives." *Doctor v. State*, 57 N.E.3d 846, 853 (Ind. Ct. App. 2016) (quoting *Santana v. State*, 10 N.E.3d 76, 78 (Ind. Ct. App. 2014)).

[8]     Mitzs argues that the bases for the traffic stop—failure stop at a stop sign and driving left of center—were pretextual. A pretextual traffic stop is a stop that police instigate under the guise of enforcing the traffic code what they would like to do for other reasons. *Id.* Mitzs alleges that officers "wanted to stop" the car so they "could identify the driver," and since Officer Miller was the only one who saw the traffic infractions, "the infractions may very well not have happened." Appellant's Br. pp. 11-12. The trial court heard evidence that Mitzs committed traffic violations that would permit a lawful traffic stop. Officer Miller testified that Mitzs did not come to a complete stop at a stop sign and was driving left of center. The gist of Mitzs's argument is that Officer Miller was not credible. Mitzs's suggestion that Officer Miller did not actually witness any traffic infractions is a request to judge witness credibility, which we may not do. *See Leonard v. State*, 80 N.E.3d 878, 882 (Ind. 2017). Because the trial court believed Officer Miller's testimony that Mitzs did not stop at a stop

sign and was driving left of center, thus committing two traffic infractions, we find that reasonable suspicion existed for the traffic stop.[2]

## II. Pat-down

Mitzs next contends that even if the traffic stop was valid, the pat-down violated the protections afforded by the Fourth Amendment. Appellant's Br. pp. 12-14.

In general, the Fourth Amendment prohibits searches and seizures conducted without a warrant that is supported by probable cause. *State v. Parrott*, 69 N.E.3d 535, 541 (Ind. Ct. App. 2017), *trans. denied.* Accordingly, a warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies. *M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016). A search incident to lawful arrest is an exception to the warrant requirement under the Fourth Amendment. *K.K. v. State*, 40 N.E.3d 488, 491 (Ind. Ct. App. 2015). An officer may arrest a person without a warrant if the officer has probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence. *Parrott*, 69 N.E.3d at 542. A person who knowingly possesses pure or adulterated marijuana commits possession of marijuana, a Class B misdemeanor. Ind. Code § 35-48-4-11(a). Possession can be either actual or

---

[2] Mitzs also challenges the traffic stop under Article 1, Section 11 of the Indiana Constitution. Although the standards are different, his argument is the same: that Officer Miller was not credible. Because the trial court believed Officer Miller, his challenge under the Indiana Constitution fails.

constructive. *Parrott*, 69 N.E.3d at 542. Actual possession occurs when the defendant has direct physical control over the item, while constructive possession involves the intent and capability to maintain control over the item even though actual physical control is absent. *Id.*

[11] Probable cause to arrest exists where the facts and circumstances within the knowledge of an officer are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested committed it. *Id.* As long as probable cause exists to make an arrest, the fact that the suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search. *Id.* A police officer's subjective belief as to whether he has probable cause to arrest a defendant has no legal effect. *K.K.*, 40 N.E.3d at 491. The ultimate determination of probable cause is reviewed de novo. *Id.*

[12] Over the years, this Court has decided numerous cases involving the odor of marijuana as the basis for a warrantless search of a person or car. *See, e.g., id.* (finding that officer had probable cause to arrest and conduct a search incident to arrest of car's backseat passenger based on "strong odor of burnt marijuana emanating" from the car and passenger's "furtive movements" and nervousness); *Bell v. State*, 13 N.E.3d 543, 546 (Ind. Ct. App. 2014), *trans. denied*; *Edmond v. State*, 951 N.E.2d 585, 591-91 (Ind. Ct. App. 2011) (finding that officer had probable cause to arrest and conduct a search incident to arrest of car's sole occupant based on smell of burnt marijuana coming from car and occupant's breath); *Meek v. State*, 950 N.E.2d 816, 820 (Ind. Ct. App. 2011)

(finding that officer had probable cause to conduct warrantless search of car's driver, where officers smelled raw marijuana emanating from car, driver admitted to possessing weapon after initially denying it, driver "stated that he had previously smoked marijuana that day[,]" and officers found no marijuana in car or on passenger's person), *trans. denied*; *Marcum v. State*, 843 N.E.2d 546, 548 (Ind. Ct. App. 2006) (finding that officers had probable cause to conduct warrantless search of car where one officer smelled "strong odor of raw marijuana emanating" from the car and another officer smelled burnt marijuana); *Sebastian v. State*, 726 N.E.2d 827, 831 (Ind. Ct. App. 2000) (finding that officers had probable cause to arrest and conduct a search incident to arrest of driver and car based on erratic driving and "distinctive odor of burnt marijuana emanating from the passenger compartment."), *trans. denied.*

[13] Mitzs argues that the logic of *Parrott* and *Bell* do not support the pat-down in this case. *See* Appellant's Br. p. 13. In *Parrott*, the defendant was the sole occupant of the car, and the odor of raw marijuana emanating from the car was "pretty strong," from which one could reasonably infer that raw marijuana was present in the car and that the defendant had the intent and capability to maintain control over it. 69 N.E.3d at 544. Therefore, we concluded that the officer had probable cause to arrest the defendant for marijuana possession and conduct a warrantless search of his person incident to that arrest. *Id.* In *Bell*, the defendant was a passenger in a car, and the officer smelled raw marijuana coming from the car and from the defendant's person. 13 N.E.3d at 544. We determined that "like the smell of burnt marijuana, the smell of raw marijuana

on a person is sufficient to provide probable cause that the person possesses marijuana." *Id.* at 546. As such, we concluded that the officer had probable cause to arrest the defendant and conduct a search incident to arrest. *Id.*

[14] Mitzs highlights that unlike the defendant in *Parrott,* he was not the sole occupant of the car, and that unlike the defendant in *Bell*, there was no evidence that there was an odor of marijuana coming from his person, and therefore the officers did not have probable cause to search his person. But these are not strict requirements. As *Parrott* explains:

> The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. It is grounded in notions of common sense, not mathematical precisions. As such, the probable cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

69 N.E.3d at 542-43 (quoting *White v. State*, 24 N.E.3d 535, 539 (Ind. Ct. App. 2015), *trans. denied*). Put another way, "'whether a defendant is alone'" in a car and "'whether the odor of marijuana—burnt or raw—is also present on an individual or his breath are factors to be considered in the analysis, not the bright-line prerequisites necessary for probable cause to exist.'" *Id.* at 544 (quoting *K.K.*, 40 N.E.3d at 494).

[15] Here, the trial court heard evidence that would permit a search incident to arrest for possession of marijuana. First, Officer Miller testified that when he approached Mitzs's car the second time, he noticed a "strong smell of

marijuana" coming from the car. Tr. Vol. II p. 119. To refute this evidence, Mitzs again argues that Officer Miller was not credible. Mitzs's suggestion that Officer Miller is not credible because he was the only one who testified about noticing a "strong smell of marijuana" and that ultimately, no marijuana was ever found, is, again, a request to judge witness credibility, which we may not do. *See Leonard*, 80 N.E.3d at 882. Second, Officer Hidlebaugh testified that only twenty minutes before stopping Mitzs, both the car and passenger were searched after noticing an odor of marijuana, but the officers did not find any marijuana. *See* Tr. Vol. II pp. 32, 88, 100. Therefore, when officers detected the "strong smell of marijuana" the second time, it would be reasonable to infer that Mitzs possessed marijuana since he was the only person in the car who had not been searched. *Id.* at 119. Applying *Parrott*'s instruction to determine probable cause from the perspective of a "reasonable and prudent" person on a case-by-case basis, grounded in "common-sense," because Mitzs was the only unsearched person in the car and the odor of marijuana coming from the car was "strong," we find that the officers had probable cause to arrest Mitzs for possession of marijuana and conduct a warrantless search of his person incident to that arrest.[3] Accordingly, there was no Fourth Amendment violation.

[16] Affirmed.

Riley, J., and Kirsch, J., concur.

---

[3] Mitzs also challenges the pat-down under Article 1, Section 11 of the Indiana Constitution. As with the traffic stop, his argument hinges on the credibility of Officer Miller and therefore his challenge under the Indiana Constitution fails.