## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 03 2019, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard O. Kallenbach
DeMotte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley A. Huke,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 3, 2019<br><br>Court of Appeals Case No.<br>19A-CR-704<br><br>Appeal from the Newton Superior Court<br><br>The Honorable Daniel J. Molter, Judge<br><br>Trial Court Cause No.<br>56D01-1804-F2-876 |

**Najam, Judge.**

# Statement of the Case

Bradley A. Huke brings this interlocutory appeal from the trial court's denial of his motion to suppress. Huke raises five issues for our review, which we restate as the following two issues:[1]

> 1. Whether law enforcement officers had reasonable suspicion that Huke was engaged in criminal activity when they initiated their traffic stop of Huke's vehicle.
>
> 2. Whether officers engaged in a lawful pat-down search of Huke's person during the traffic stop.

We affirm.

# Facts and Procedural History[2]

In April of 2018, Newton County Drug Task Force Officer Vincent Lowe received a tip from an informant that Huke would be "traveling with some

---

[1] In his statement of the issues, Huke additionally asserts that the seizure of evidence from his vehicle was the product of an invalid search. However, we were unable to discern any argument on the merits of that purported issue in his brief, and, thus, there is no such issue for us to review. *See* Ind. Appellate Rule 46(A)(8)(a). Further, Huke's additional stated issue that the trial court erroneously placed the burden of proof for his motion to suppress on him instead of the State is not supported by cogent reasoning and is waived. *See id.*

[2] Rather than follow the format for appellate briefs prescribed by Indiana Appellate Rule 46, Huke has instead consolidated all relevant information under the singular heading, "The Facts, Law and Argument." Appellant's Br. at 4. We remind Huke's counsel that the "great rule to be observed in drawing briefs consists in conciseness *with perspicuity*," and, to that end, we encourage counsel to follow our appellate rules in the future. *Buchanan v. State*, 122 N.E.3d 969, 971 (Ind. Ct. App. 2019) (emphasis added; quotation marks omitted), *trans. denied.*

cocaine" from a known "trap" house[3] in Lake County to Huke's residence in Newton County. Tr. Vol. 2 at 5. Officer Lowe had relied on the informant before; knew the informant knew Huke; knew the informant's described location of the trap house to be accurate; and, later, observed Huke enter and then exit the trap house. Officer Lowe then followed Huke southbound on I-65 for about twenty miles into Newton County. Newton County Deputy Sheriff Ryan Holloway accompanied Officer Lowe, and, once the officers verified that they had reentered Newton County, they initiated a traffic stop of Huke's vehicle for a purported left-lane violation.

[4] Upon approaching Huke's vehicle during the traffic stop, Officer Lowe and Officer Holloway immediately smelled burnt marijuana emanating from Huke's vehicle. Officer Lowe asked Huke to exit the vehicle, and, while Huke and Officer Holloway engaged in a conversation, Officer Lowe returned to his vehicle and called for a K-9 unit.

[5] Officer Adam Suarez arrived with his K-9, Alpha, about five minutes later. As Alpha was about to sniff around the exterior of Huke's vehicle, Officer Lowe approached Huke and asked if he would mind if Officer Holloway did a pat-down of Huke while Alpha walked around Huke's vehicle. Huke did not respond verbally but did lift his arms up for Officer Holloway, who immediately felt and saw cocaine in a baggie inside Huke's right-front jacket pocket. Nearly

---

[3] A "trap house" is "a house used to sell narcotics, and, if anyone stays there, it's on an infrequent basis . . . ." *Ector v. State*, 111 N.E.3d 1053, 1056 (Ind. Ct. App. 2018) (cleaned up), *trans. denied*.

simultaneously, Alpha alerted the officers to contraband at the driver's side door of Huke's vehicle. The officers placed Huke under arrest and read him his *Miranda* warnings, at which point Huke admitted to possessing cocaine.

[6] The State charged Huke with dealing in cocaine, as a Level 2 felony; possession of cocaine, as a Level 4 felony; and possession of paraphernalia, as a Class C misdemeanor. Huke filed a motion to suppress the evidence and advanced several theories as to why the evidence seized from the traffic stop should be suppressed. The trial court denied his motion in a general judgment. The court then certified its order for interlocutory appeal, which we accepted.

# Discussion and Decision

## *Standard of Review*

[7] Huke appeals the trial court's denial of his motion to suppress. As our Supreme Court has explained:

> Trial courts enjoy broad discretion in decisions to admit or exclude evidence. When a trial court denies a motion to suppress evidence, we necessarily review that decision deferentially, construing conflicting evidence in the light most favorable to the ruling. However, we consider any substantial and uncontested evidence favorable to the defendant. . . . If the trial court's decision denying a defendant's motion to suppress concerns the constitutionality of a search or seizure, then it presents a legal question that we review *de novo*.

*Marshall v. State*, 117 N.E.3d 1254, 1258 (Ind. 2019) (cleaned up). Further:

The Fourth Amendment[4] safeguards our persons, our property, and our peace by requiring that law enforcement first have a warrant supported by probable cause before executing searches or seizures. This mandate notwithstanding, one exception to the warrant and probable-cause requirements allows police to seize a person without a warrant and on a level of suspicion less than probable cause—that is, the reasonable-suspicion standard for brief investigatory stops. We often call these encounters *Terry* Stops, where an officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. Traffic stops typically fall into this *Terry* Stop category, and, therefore, must be based upon reasonable suspicion.

Though admittedly a somewhat abstract concept, reasonable suspicion is not an illusory standard. The reasonable-suspicion standard guards Fourth Amendment rights alongside the warrant and probable cause requirements. Law enforcement may not initiate a stop for any conceivable reason; they must have at least reasonable suspicion lawbreaking occurred. Nor can police rely on a mere hunch simply suggesting a person committed a crime before making a *Terry* Stop, like a traffic stop. To be sure, such a stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. Reasonable suspicion requires more than an officer's own subjective belief a person might be violating the law. . . .

*Id.* at 1258-59 (cleaned up).

_____

[4] Huke does not present any separate arguments under article 1, section 11 of the Indiana Constitution.

## Issue One: Validity of the Traffic Stop

[8] We first address Huke's argument on appeal that there is no evidence that he committed a left-lane violation and, as such, the traffic stop was invalid. Huke bases his argument on Indiana Code Section 9-21-5-9. In particular, Huke contends that he was not "traveling less than the established maximum speed limit" and that "[t]he only evidence in the record as to the time Huke was 'pacing' [the lead semi] is that it was approximately five seconds," which, Huke continues, "is not reasonable in that it would allow the stopping of almost any vehicle that were to travel in the left lane . . . ." Appellant's Br. at 9. However, while Officer Lowe was clear that he "pulled [Huke] over for a left lane violation," Tr. Vol. 2 at 23, Huke cites no legal authority that limits the trial court to consideration of only the officer's proffered basis for a traffic stop in considering whether to grant or deny a motion to suppress. *See* Ind. Appellate Rule 46(A)(8)(a).

[9] Notwithstanding any purported left-lane violations, Officer Lowe had reasonable suspicion that Huke was engaged in criminal activity at the time Officer Lowe initiated the traffic stop. Officer Lowe had received a tip from a reliable informant that Huke would be visiting a trap house in Lake County to purchase cocaine, which Huke would then bring back to his residence in Newton County. Officer Lowe knew the informant's identity; had worked with the informant previously; knew the informant knew Huke; and knew the informant's description of the trap house to be accurate. Officer Lowe then verified the tip by observing Huke enter the trap house before immediately

proceeding back to Newton County.  In other words, alleged traffic violations notwithstanding, Officer Lowe had reason to suspect that, at a minimum, Huke possessed cocaine.  *See, e.g.*, *Russell v. State*, 993 N.E.2d 1176, 1180 (Ind. Ct. App. 2013).  Accordingly, the traffic stop was valid under the Fourth Amendment.[5]

### *Issue Two:  Validity of the Pat-Down Search*

[10] We next address Huke's argument that the officers were not justified in their pat-down search of Huke's person.  According to Huke, the pat-down was invalid because the officers had no reasonable fear for their safety and, further, any apparent consent Huke gave to the pat-down was involuntary and the product of police coercion.

[11] But we must conclude that Huke's complaints about officer safety and police coercion are irrelevant.  Upon stopping Huke's vehicle, officers smelled the odor of burnt marijuana.  And, shortly thereafter, Alpha alerted the officers to contraband inside Huke's vehicle.

[12] At that point, and coupled with the informant's information, the officers had probable cause to arrest Huke.  *See State v. Parrott*, 69 N.E.3d 535, 544 (Ind. Ct. App. 2017) (holding that probable cause to arrest existed where the defendant "was the sole occupant of the vehicle[] and the odor of raw marijuana

---

[5] Huke's apparent argument that the traffic stop was pretextual is not supported by cogent reasoning and is waived.  *See* App. R. 46(A)(8)(a).

emanating from the vehicle was 'pretty strong'"), *trans. denied*. As probable cause to arrest Huke existed at that time, the officers were authorized to "conduct a warrantless search of his person incident to that arrest." *Id.* Thus, it does not matter whether the officers stated they were conducting the pat-down for officer safety or whether Huke's apparent consent was voluntary. At that point, Huke was subject to arrest and the discovery of the cocaine on his person was inevitable. *See Baker v. State*, 562 N.E.2d 726, 728 (Ind. 1990); *Winborn v. State*, 100 N.E.3d 710, 713-14 (Ind. Ct. App. 2018). The trial court did not err when it denied Huke's motion to suppress the evidence from the pat-down.

[13] In sum, we affirm the trial court's denial of Huke's motion to suppress.

[14] Affirmed.

Bailey, J., and May, J., concur.